[Civ. No. 7382.   Third Dist.   Mar. 13, 1948.]

JOE ALVES et al., Respondents, v. JOE A. RODRIGUES et al., Appellants.

Harold V. Daley for Appellants.

L. E. MacNicol and Gerald Wallace for Respondents.

THOMPSON, J.—This is a suit for unlawful detention of a store building at Merced, leased to defendants by an oral agreement for a term of one year, for $200 rental per month.

After service on defendants of an alleged 30-day notice to terminate the lease, under section 789 of the Civil Code, and a three-day notice pursuant to section 791 of the Civil Code, this suit was commenced for possession of the property and to recover $200 rental per month while it was unlawfully withheld from the owners after the tenancy was terminated. A general demurrer to the complaint was overruled. The court adopted findings favorable to plaintiffs in every essential respect. Judgment was rendered awarding plaintiffs possession of the property, and for $200 rental for each month the property was detained from the owners after the lease was terminated by said notices. A motion for new trial was denied. A motion to set aside the judgment under section 473 of the Code of Civil Procedure was also denied. From the judgment and order this appeal was perfected.

The appellants contend that the demurrer was erroneously overruled, because the complaint fails to state a cause of action on account of defective and ineffectual notices to terminate the lease; that the findings and judgment are not supported by the evidence; that the court erred in refusing to set aside the judgment, and that plaintiffs are estopped from terminating the lease because defendants were induced to purchase the stock of goods and lease of the previous lessees, Mr. and Mrs. Stellmon, by promising defendants that if they bought the goods and lease plaintiffs would consent to an assignment of that lease.

The court found that plaintiffs leased the store building to defendants May 1, 1945, by verbal agreement "for a term of one year, commencing on the 1st day of May, 1945, at a rental of $200.00 per month, payable in advance on the 1st day of each month;" that defendants took possession of the premises on April 30, 1945, and still remain in possession; that notices to terminate the lease under section 1161 of the Code of Civil Procedure, and for possession of the property under section 791 of the Civil Code, as alleged in paragraphs VI and VII of the complaint, were served; that defendants purchased the stock of goods and store fixtures from Mr. and Mrs. Stellmon, the former lessees, for $5,500; that defendants did not purchase said stock of goods, or take possession of said premises, in reliance on any inducement or promise on the part of plaintiffs to consent to the Stellmons' assignment of their lease; that said consent was not given as required by the terms of the lease, and that said lease was not assigned; that plain-

tiffs were entitled to possession of the premises from and after September 1, 1946, and to damages in the sum of $200 per month ''since the termination of defendants' verbal lease on May 1, 1946.'' Judgment was rendered accordingly.

Plaintiffs own the store building and certain fixtures and equipment contained therein, located at Merced. June 22, 1944, they leased the property to Mr. and Mrs. Stellmon, for a term of five years, at $200 rental per month, payable in advance. That instrument provided that the property should not be sublet, or the lease assigned, without the written consent of the lessors. No written consent to the assignment of the lease or to the subletting of the store property was ever made by plaintiffs. In the spring of 1945, Stellmon decided to give up the store business and to move out. The defendants then owned and operated a store at El Nido. Mr. Alves and Mr. Rodrigues are half brothers. Mr. Alves told defendants that when the Stellmons moved out, they could have the store if they bought the lessees' stock of goods. There is a conflict of evidence regarding the terms upon which Alves orally told defendants they could rent the store property. He testified that he first told the defendants he wanted $250 rental per month, but that he later agreed to accept $200 per month. No written lease, however, was executed, although Mr. Alves prepared and delivered a proposed written lease ''on a strict *month to month* basis, commencing on May 1st, 1945'' at the rental of $200 per month, which was rejected by defendants, and was never signed. Nor was the assignment of the Stellmons' lease consented to in writing by plaintiffs. It was returned to plaintiffs for that purpose when the Stellmons sold out their business, and it was destroyed by plaintiffs on May 2, 1945, at the store, in the presence of Mr. Stellmon and the defendant, Joe Rodrigues. Rodrigues saw them burn the lease and protested against that act. That was the day after defendants took possession.

Defendants bought the stock of goods and fixtures from the Stellmons for $5,500 on April 30, 1945. The receipt for that payment recites that it was ''as full payment for all merchandise on premises plus a four year lease.'' Defendants received a bill of sale of the stock of goods. They contend that they were induced to purchase the stock of goods and lease from the Stellmons for $5,500 on plaintiffs' promise that, if they did so, plaintiffs would consent to the assignment and accept them as lessees for the balance of the unexpired term of the lease,

which plaintiffs subsequently failed and refused to do. Mr. Alves was in the store when defendants took possession on the first day of May, 1945. He remained and worked in the store for the defendants, cutting meat for a brief period of time. The defendants took charge of the store with plaintiffs' consent. We assume, as the trial court determined, that plaintiffs orally leased the store property to defendants for the period of one year, commencing on May 1, 1945, at the rental of $200 per month, payable in advance. Mr. Alves testified that he told Mr. Rodrigues that "for one year [commencing with May 1, 1945] he could stay." It satisfactorily appears that the oral lease for a year was made. Trouble soon arose between the parties over the terms of the lease. Defendants insisted on a five-year lease at $200 per month. At the request of plaintiffs they paid their rent monthly by depositing their checks for said sum to the credit of plaintiffs' account in their bank. It is not disputed that said rent was paid for each month to and including May, 1946.

May 1, 1946, plaintiffs served the defendants with a written 30-day notice, pursuant to section 789 of the Civil Code, to terminate the lease. Plaintiffs concede they were paid by the defendants, and accepted, $200 per month as rental, to and including the month of May, 1946. The notice to terminate the lease is attached to the complaint as exhibit A, and reads, in part:

"You . . . are hereby notified and required to remove from, and deliver up to the undersigned the possession of the premises,. . . at the expiration of the thirty day period commencing on the 1st day of May, 1946, and ending on the 31st day of May, 1946.

"This is a notice to quit and remove from the above described premises for the purpose of terminating your tenancy on the last mentioned date."

Section 789 of the Civil Code provides that:

"A tenancy or other estate at will, however created, may be terminated by the landlord's giving notice in writing to the tenant, in the manner prescribed by section 1162 of the Code of Civil Procedure, to remove from the premises within a period of not less than thirty days to be specified in the notice."

June 1, 1946, plaintiffs served the defendants with a written three-day notice under section 791 of the Civil Code of intention to reenter the property. That notice reads in part:

"You and each of you are hereby required and notified to quit and vacate the hereinafter described premises . . . within three (3) days after the service of this Notice upon you, under penalty of law.

"This notice is intended to supplement the Thirty Day Notice Terminating your tenancy, which was served upon you on May 1st, 1946, and pursuant to the terms of which your tenancy terminated on May 31st, 1946."

Subdivision 3 of section 1161 of the Code of Civil Procedure provides in part that a tenant of real property is guilty of unlawful detainer,

"When he continues in possession, . . . after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than one for the payment of rent, and three days' notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him . . . ."

■ We conclude that the foregoing 30-day notice for the defendants to surrender possession of the premises "at the expiration of the thirty day period . . . ending on the 31st day of May, 1946," was adequate to confer jurisdiction on the court to terminate the oral lease. The trial court determined that the notice was adequate. We may concede that the subsequent three-day notice which was served under section 791 of the Civil Code was merely supplemental to the 30-day notice, as it states, and that it added nothing of value thereto. That notice was unnecessary. The action was not commenced until the 6th day of June, 1946. The giving of the statutory notice to terminate the one year lease was, of course, a necessary prerequisite to the right to maintain this action. No rental was accepted by plaintiffs after the month of May. The defendants deposited in a bank their checks for rental for the following months of June, July and August, but those payments were rejected by plaintiffs. ■ The plaintiffs had a right to terminate the tenancy upon the giving of notice as required by section 789 of the Civil Code, which they did.

■ The appellants contend they took possession of the store property for the unexpired term of the written five-year lease to the Stellmons, acquired with the purchase of the stock of goods, and that plaintiffs are estopped from denying the validity of that lease because they induced the defendants to

buy the stock of goods by promising them they would agree in writing to the Stellmons' assignment of their lease if the defendants would purchase their goods, which defendants did, relying on that promise. The Stellmon lease contained the provision that it could not be sold or assigned without the written consent of the owners. Plaintiffs' consent to that assignment was never given in writing or otherwise. The Stellmon lease was burned and destroyed by Mr. Alves, in the presence of Joe Rodrigues. Mr. Rodrigues admitted that fact. The court adopted findings to the effect that plaintiffs did not induce the defendants to purchase the Stellmon stock of goods by promising them they would consent to an assignment of the former tenants' written lease, that the defendants did not purchase the stock of goods in reliance upon any such alleged promise, and that written consent to the assignment of the lease was not made. There is a conflict of evidence regarding the alleged inducement for defendants to purchase the goods. It is not contended on appeal that the assignment of the lease was ever actually made, or that the plaintiffs consented thereto in writing. In fact, the written lease was destroyed in the presence of Mr. Rodrigues, as he admitted at the trial. Mr. Alves testified that he never consented orally or in writing to lease the property to the defendants upon any terms other than a month to month tenancy. In view of the conflict of evidence, we are bound by the foregoing findings.

The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 10, 1948.